

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GARY HILL, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-14-A |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
|     DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

#### I. STATEMENT OF THE CASE

Plaintiff Gary Hill ("Hill") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Hill protectively applied for SSI on June 24, 2010. (Transcript ("Tr.") 16, 97-107.) After his application for benefits was denied initially and on reconsideration, Hill requested a hearing before an administrative law judge ("ALJ"). (Tr. 16, 47-56.) The ALJ held a hearing on October 18, 2011, and he issued an unfavorable decision on December 8, 2011. (Tr. 13-43.) On September 26, 2012, the Appeals Council denied Hill's

request for review, leaving the ALJ's decision as the final decision of the Commissioner in his case. (Tr. 5-10.) Hill subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA and numerous regulatory provisions. *See* 20 C.F.R. Pt. 416. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this

responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## II. ISSUE

In his brief, Hill presents one issue: Whether the ALJ's finding at Step Two that Hill did not suffer from any severe impairment is supported by substantial evidence. (Plaintiff's Brief ("Pl.'s Br.") at 1; *see* Pl.'s Br. at 7-11; *see also* Plaintiff's Reply ("Pl.'s Reply") at 1-4.)

## III. ALJ DECISION

In his December 8, 2011 decision, the ALJ noted that this was Hill's ninth application for SSI and found no basis to reopen his previous applications. (Tr. 16.) Because SSI cannot be awarded prior to the date of application, the ALJ considered the issue of disability as of Hill's application date of June 24, 2010 and found that Hill did not engage in substantial gainful activity after June 24, 2010. (Tr. 16, 18.) *See* 20 C.F.R. § 416.335. The ALJ further found that

Hill had the "medically determinable impairments of sickle cell disease and hypertension." (Tr. 18.) The ALJ, citing to *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), next held that Hill did not have any severe impairments because Hill did "not have an impairment or combination of impairments that has limited (or is expected to limit) his ability to perform basic work-related activities for 12 consecutive months." (Tr. 18.) Consequently, the ALJ found that Hill was not disabled. (Tr. 22.)

### IV. DISCUSSION

#### A. Step Two Issue

Hill claims that the ALJ's finding at Step Two that he did not suffer from any severe impairment is not supported by substantial evidence. (Pl.'s Br. at 5-9.) Hill "contends that the record contains a copious amount of evidence of impairments which should have been found 'severe' because they interfere with Hill's ability to work." (Pl.'s Br. at 8.) Hill claims that there was evidence in the record that Hill experienced sickle-cell crises six times a week, each lasting between three and four hours, and that such recurrent sickle-cell attacks resulted in hospitalization and emergency care, all which would interfere with his ability to work. (Pl.'s Br. at 8-9.) In addition, Hill argues that the August 2010 consultative examination by Victor Battles, M.D. ("Dr. Battles"), also supports his claims that his sickle-cell and vision problems were severe. (Pl.'s Br. at 8-9.) Furthermore, Hill claims that Dr. Battles' consultative examination also indicated that other impairments, such as his temporal vision-field deficits, flexion contractures, glaucoma, and neurological issues were, at the very least, medically determinable impairments. (Pl.'s Br. at 9-10.)

In this case, the ALJ, as set forth above, found at Step Two that, while Hill had the medically determinable impairments of sickle cell disease and hypertension, he did not have any

severe impairment or combination of impairments. In evaluating Hill's impairments, the ALJ reviewed, *inter alia*, the following evidence in the record:

(1) the fact that Hill was diagnosed with sickle cell disease at birth, underwent a splenectomy at age 21, sustained a gunshot wound in his neck at age 23, sustained a laceration to his left wrist in a 2002 fall, and fractured his left hand several years ago (Tr. 19; *see* Tr. 234);

(2) records dated in February 2009 showing Hill underwent a laparoscopic gall bladder surgery secondary to cholecystitis (Tr. 19; *see* Tr. 203);

(3) records dated June 2010 showing that Hill sought emergency medical treatment for mild pain in his back, arms, and shoulders, which he attributed to a sickle cell crisis, and that he was discharged in good condition with medication that relieved his symptoms (Tr. 19; *see* Tr. 221-22);

(4) an August 2010 consultative internal medicine examination by Dr. Battles (Tr. 19-20; *see* Tr. 234-37);

(5) examination notes dated September 21, 2010 showing that Hill sought treatment at the emergency room for a one-day history of intermittent abdominal pain and was eventually discharged after there was no clear diagnosis (Tr. 20; *see* Tr. 240-48, 253);

(6) hospital records dated September 25, 2010 showing that Hill again presented with intermittent abdominal pain and was treated for an H. pylori infection (Tr. 20; *see* Tr. 253-69);

(7) a Physical Residual Functional Capacity Assessment ("PRFCA") dated September 25, 2010 in which State Agency Medical Consultant ("SAMC") Bonnie Blacklock, M.D. ("SAMC Blacklock") opined that Hill's impairments did not establish that he suffered from any exertional, postural, manipulative, visual, communicative, or environmental limitations (Tr. 20; *see* Tr. 274-81);

(8) a Case Assessment Form dated January 14, 2011 in which SAMC Yvonne Post, D.O., affirmed SAMC Blacklock's PRFCA (Tr. 20; *see* Tr. 282);

(9) emergency room notes dated May 21, 2011 showing that Hill, who had run out of his medications, presented with a five-day history of mild pain in his chest and abdomen, was treated with pain medication, and discharged in good condition (Tr. 20; *See* Tr. 329-35);

(10) hospital records dated May 24, 2011 showing that Hill was treated for a gastric ulcer (Tr. 20; *see* Tr. 307-09);

(11) emergency room notes dated August 21, 2011 showing that Hill presented with bilateral leg pain that he attributed to sickle cell and was again out of all his medications (Tr. 20; *see* Tr. 288-90);

(12) evidence that he had used cocaine as recently as 2011 and marijuana use (Tr. 21; *see* Tr. 308-09);

(13) the testimony of Hill (Tr. 21); and

(14) the testimony of Hill's wife (Tr. 21).

In making his severity determination at Step Two, the ALJ indicated that the SAMCs opinions were well supported, and, therefore, the ALJ gave them very significant weight. (Tr. 20.) As to Dr. Battles' examination, the ALJ stated:

> During the examination, Mr. Hill reported having frequent pain in his neck, shoulders, and lower back, which he attributed to sickle cell attacks. He stated his symptoms occurred about six times per week and lasted 3-4 hours, and that he was typically bedridden until the crises ended. He reported experiencing "spider-like" floaters in his visual fields after each crisis, lasting for about 24 hours, and he stated he had been treated in the past with laser surgery for sickle cell retinopathy. He reported he was able to walk only about two blocks due to dyspnea on exertion and pain in his thighs. He also said he was treated with plasma transfusions several times[s] per year, and he stated his symptoms worsened with cold weather.

>Despite his symptoms, Dr. Battles' physical examination of Mr. Hill was essentially normal. In particular, the claimant had normal range of motion in all major joints, he exhibited 5/5 handgrip strength bilaterally, and he did not require the use of an assistive device to ambulate.
>
>A vision test showed moderate to marked inferior and moderate temporal visual field defects in the right eye, but Mr. Hill had 20/50 vision in his right eye and 20/40 vision in his left eye, both without correction. At the hearing, he testified his near vision was blurry but that his distance vision was adequate.
>
>Dr. Battles performed a sickle cell screen, which was positive and showed a hematocrit of 38.7% (compared with listing-level severity requiring 26% or less), and Dr. Battles questioned "whether he truly has SS disease (*i.e.*, sickle cell anemia) or one of the other sickle cell disorders such as SC disease" (Dr. Battles was referring to different types of sickle cell disease; sickle cell anemia is the most common type of sickle cell disease).
>
>Dr. Battles further noted Mr. Hill had sitting, standing, and walking limitations, but I conclude that Dr. Battles accepted the claimant's subjective statements at face value; because they are unsupported, they have no probative value in this matter.

(Tr. 20 (internal citations omitted).)

To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *cf. id.* § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone v. Heckler*, 752 F.2d 1099, 1104–05 (5th Cir. 1985). Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect

on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (emphasis added).

In this case, the ALJ specifically analyzed Hill's impairments of sickle cell disease and hypertension. (Tr. 18; *see* Tr. 18-21.) In addition, the ALJ also evaluated Dr. Battles' examination, which contained references to Hill's vision, flexion contractures, and neurological impairments. While the ALJ did not find that any of Hill's alleged impairments were severe, the ALJ clearly reviewed the evidence in the record relating to Hill's impairments. (Tr. 18-21.) Even assuming without deciding that the ALJ incorrectly characterized or failed to discuss some of the evidence[1] in the record, including all of Dr. Battles' examination notes and opinions, there is substantial evidence in the record that supports the ALJ's Step Two determination that Hill did not suffer from a severe impairment. At the very least, the two SAMCs' opinions, to which the ALJ gave very significant weight, clearly support the ALJ's Step Two findings. The ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, No. 4:08-CV-503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)).

---

[1] As stated above, Hill claims that "the record contains a copious amount of evidence of impairments which should have been found 'severe' because they interfere with Hill's ability to work." (Pl.'s Br. at 8.) However, a comparison of the evidence pointed to by Hill in his brief with the ALJ's discussion of the medical evidence, shows that the ALJ referenced (and thus can be said to have considered) most of the evidence referred to by Hill, with the exception of a June 21, 2011 visit to the emergency room.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **February 25, 2014** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 11, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv